```
              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
                        FORT WORTH DIVISION
```

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 1 2 2009
CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | |
|---|---|
| KEVIN M. SMITH, | § |
| Plaintiff, | § § § |
| VS. | § NO. 4:08-CV-304-A |
| OFFICER AGUIRRE, ET AL., | § § |
| Defendants. | § § |

## MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the above-captioned action wherein Kevin M. Smith ("Smith") is plaintiff, and Officer Aguirre ("Aguirre"), Officer Zapata ("Zapata"), Officer Edun ("Edun"), and the City of Mansfield ("Mansfield"), are defendants. On May 13, 2009, defendants filed motions for summary judgment. Smith has not properly filed a response. Having considered the motions, the summary judgment evidence ("the evidence"), and the applicable authorities, the court concludes that the motions of defendants Aguirre, Edun, and Mansfield should be granted, and Zapata's motion should be denied in part and granted in part, for the reasons discussed herein.

I.

### Allegations of the Complaint

Smith brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while he was a pretrial detainee at Mansfield Law Enforcement Center ("MLEC") on December 27, 2006. Smith contends that at around

3:25 a.m. while he was sleeping, three hooded and fully riot-dressed city police officers raided his cellblock, tased him twice, and beat him, eventually sending him to the hospital.

II.

Motions for Summary Judgment

A. Officers' Motions

Each officer makes essentially the same arguments in his motion. Each officer contends that summary judgment is appropriate because he is entitled to qualified immunity from Smith's claim because (1) Smith has not shown that the officer violated his clearly established federal rights, and (2) each officer's conduct was objectively reasonable. Each officer further argues that Smith's claim fails because (1) Smith suffered only de minimus injuries, (2) the officers were justified in their actions against Smith, (3) each officer did not use greater force than what was required, (4) each officer reasonably perceived the threat posed by Smith and (5) each officer tried to temper the severity of the force used. Each officer also argues that Smith is not entitled to recover compensatory damages for his medical expenses, pain and suffering, or for being placed in a high-security prison.

B. Mansfield's Motion

Mansfield contends that summary judgment is appropriate because Smith's claims against Mansfield are purely based on a theory of respondeat superior, and Smith can produce no evidence that a policy or custom of Mansfield caused him to be deprived of

a federally protected right. Mansfield also contends that Smith is not entitled to recover compensatory damages for his medical expenses, pain and suffering, or for being placed in a high-security prison.

### III.

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When a plaintiff verifies his complaint pursuant to 28 U.S.C. § 1746, the factual allegations in the complaint have the evidentiary value of a sworn affidavit. See 28 U.S.C. § 1746; Fed. R. Civ. P. 56(e).

The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celeotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the nonmoving party must do more than merely show that

3

there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In deciding whether a fact issue has been created, the inferences to be drawn from the evidence must be viewed in the light most favorable to the nonmoving party." Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co., 290 F.3d 303, 310 (5th Cir. 2002). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 428. "Conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

IV.

Facts

A.  Undisputed Facts

Smith was booked into MLEC on November 9, 2006, while awaiting trial on four federal charges. Sometime in December 2006, MLEC officials noticed that pieces of MLEC fixtures were missing. Because the officials were worried that the missing fixtures could be used as shanks, the officials decided to have a "shakedown" at MLEC. The plan for the shakedown involved securing the inmates in their cells, opening the cell doors, strip-searching the inmates individually, moving them into another area, and then searching the cells. The officials decided to have members of the Mansfield SWAT team conduct the search in light of their training, including their training in

4

the use of deadly force.

On December 26, 2006, Smith received news that his father was hospitalized and was not expected to live. Smith requested to be placed in a segregated cell so that he could grieve. Smith was placed in a segregated cell sometime on that same day, but was moved back to his bunk in the early hours (before 3:25 a.m.) of December 27.

Meanwhile, Mansfield SWAT officers met with MLEC corrections officers to discuss the raid. At 3:25 a.m., the officers, including Aguirre, Edun, and Zapata, entered the common area adjoining Smith's bunk. The officers were fully hooded and wearing riot gear. The officers yelled loudly to wake up the sleeping inmates. The officers wanted the inmates to wake up and place their hands on the cell bars so that their hands could be secured before the cell doors were opened.

Despite the officers' yelling, Smith did not wake up and had to be awoken by a fellow inmate at the officers' request. When Smith did wake up, he got out of his bunk but did not put his hands on the bars. As a result, Aguirre tased him through the bars. After being tased, Smith yelled out a belligerent remark and did not put his hands on the bars. Aguirre tased Smith for a second time.

After the second tasing, the doors to the bunk were opened and Zapata entered Smith's bunk. Zapata pressed Smith face down

on the floor and put his knee on Smith's back or neck[1] to put flex cuffs on Smith's wrists. Once Smith was flex cuffed, Zapata and Edun took Smith to an individual cell. At the individual cell, Smith was ordered to kneel, which he did not do. Consequently, Zapata delivered two knee strikes on the side of Smith's leg. Once Smith was kneeling, Zapata removed Smith's flex cuffs and left the cell.

At 3:53 a.m., Smith was transferred by ambulance to Methodist Mansfield Medical Center, where he received medical treatment. Smith was returned to MLEC at 6:10 a.m.

B.  Disputed Facts

The parties dispute many aspects of the shakedown. First, Smith contends that he was tased without cause or warning, and that when he jumped off of his bunk, he asked what was happening, to which Aguirre replied not with instructions, but with vulgarities, before tasing Smith. Smith states that he was specifically selected to be tased due to his weight and size because the officers wanted to test a new taser. The defendants contend that the shakedown was not a mock raid and was conducted to find shanks. Defendants state that Smith was repeatedly ordered to approach the bars and place his hands on them, was warned that he would be tased if he did not comply, and made no effort whatsoever to comply with the officers' orders.

Smith states that the two barbs from the taser implanted

---

[1] Smith description is that Zapata "dropped his body weight" on Smith's neck with his knee.

6

into his chest.  Smith also contends that the second shock from the taser left him unconscious, at which point Zapata entered his cell and began beating, punching, and kicking him, awaking Smith from unconsciousness, at which point Zapata yanked the taser barbs from Smith's chest, causing Smith to bleed.  Zapata denies assaulting Smith, and all of the defendants argue that Smith was never unconscious.  Further, defendants contend that the taser barbs got tangled up in Smith's clothing and barely made contact with his skin.

Smith asserts that while being escorted to the individual cell by Zapata, Zapata deliberately steered him into various door jams, damaging Smith's teeth and bruising his head.  Zapata denies running Smith into anything.  Smith further argues that, once in the cell alone, the officers were incoherent in their demands that he kneel, did not give him a chance to comply with the order, and that he was unnecessarily punched, kicked, and shoved.  Both Zapata and Edun deny assaulting Smith.

Smith contends that medical personnel determined that he needed to go to the hospital, despite an officer's insistence that the matter would be kept "in house."  Defendants contend that Smith was taken to the hospital pursuant to a policy because he had been tased.

Finally, Smith contends that he now suffers from reoccurring back and head aches, that the incident aggravated some of his pre-existing injuries, and left him with head trauma, bruises and abrasions to his head, neck, and abdomen, and chipped teeth.  The

defendants argue that Smith only suffered some abrasions and a minor head injury caused solely from Smith falling and hitting his head after being tased.

V.

Analysis

A. Defendant Mansfield

A municipality cannot be held liable for the constitutional violations of its employees under the doctrine of respondeat superior or vicarious liability. See Collins v. City of Harker Heights, 503 U.S. 115, 123 (1992); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, a plaintiff must show that he was deprived of a constitutional right because of a municipality's official policy, practice, or custom. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). A municipality's policymakers effectively make a policy or condone a custom by knowingly ratifying unconstitutional or illegal actions of their employees. Turner v. Uptown County, 915 F.2d 133, 136 (5th Cir. 1990). Additionally, a plaintiff may recover if the "injury . . . results from the complete lack of training or grossly inadequate training of a police force provided such is the result of a deliberate and conscious indifference by the city." Languirand v. Hayden, 717 F.2d 220, 227 (5th Cir. 1983) (internal quotation marks omitted).

To establish a municipal custom or policy, plaintiff must show "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police

8

misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force." Fraire v. Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992). Conclusory allegations of a pattern of repeated constitutional violations, without evidence, are insufficient to defeat a motion for summary judgment. See Richardson v. Oldham, 12 F.3d 1373, 1382 (5th Cir. 1994).

Mansfield argues that Smith cannot prove the existence of a policy or custom that deprived him of a constitutional right. Aside from Smith's conclusory allegations that the "SWAT officers" and "jail administrators" routinely use jail inmates as subjects for raid exercises and intimidate pretrial detainees to discourage them from filing grievances, Smith has submitted nothing to suggest that Mansfield has a policy or custom that deprived him of a federally protected right. Accordingly, Mansfield has shown that it is entitled to judgment as a matter of law.

B.  Officer Defendants

Each of the defendant officers assert that he is entitled to the affirmative defense of qualified immunity. In the performance of discretionary functions, government officials are generally granted qualified immunity. Wilson v. Layne, 526 U.S. 603, 609 (1999). Qualified immunity shields officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

9

Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). The relevant question is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). Objective reasonableness is a matter of law, but "underlying historical facts may be in dispute that are material to the reasonableness determination." Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). When a defendant invokes the defense of qualified immunity, the plaintiff bears the burden of rebutting the defense's applicability. See McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002).

A pretrial detainee's allegations of excessive force by a detention officer are properly analyzed under the Fourteenth Amendment.[2] See Valencia v. Wiggins, 981 F.2d 1440, 1445 (5th Cir. 1993). The court, in examining the amount of force used on a pretrial detainee for the purpose of institutional security, evaluates "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Id. at 1446 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). To determine whether the officer had the subjective intent of applying force in good

---

[2] Smith has not established that any defendant in this action has violated his Eighth or Fourth Amendment rights.

faith, the court evaluates (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of the forceful response. Id. at 1446-47.

A claimant asserting an excessive force claim must show that he has suffered more than a de minimus physical injury; however, long-term damage is not required, and "there is no categorical requirement that the physical injury be significant, serious, or more than minor." Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999); see Payne v. Parnell, 246 F. App'x 884 (5th Cir. 2007) (unpublished). The court must look to the context in which the force was deployed to determine whether an injury caused by excessive force is de minimus because the necessary level of required injury is "directly related to the amount of force that is constitutionally permissible under the circumstances." Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996); see Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999).

    1.   <u>Defendant Edun</u>

Edun argues that he is entitled to judgment as a matter of law because his sole interaction with Smith was escorting him down the hallway with Zapata. Smith's complaint generally avers that Edun was one of three officers who were a part of the shakedown. Smith does not allege the specific acts that Edun took against Smith, and Edun argues that Smith has alleged no

11

facts to suggest that he acted unreasonably towards Smith. Edun also provides evidence that his only interaction with Smith was escorting him down the hall in a "c-clamp hold." The court concludes that Smith has failed to rebut Edun's assertion of qualified immunity, and Edun is entitled to judgment as a matter of law.

2. <u>Defendant Aguirre</u>

Smith claims that Aguirre's use of the taser on him constituted excessive force. Smith contends that the officers targeted him to try out a new taser. Smith provides no evidence of such plan for him to be a test subject aside from his self-serving conclusory allegations. The credible evidence plainly shows that Smith was tased because he refused to obey the officers' orders to put his hands on the bars of his cell. The court need not decide whether Aguirre used excessive force because the court is satisfied that Smith has failed to rebut Aguirre's contention that a reasonable officer would not have known that tasing a noncompliant detainee in the midst of a security shakedown was clearly unlawful. <u>See</u> <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 821 (2009). Accordingly, Aguirre has shown that summary judgment of this claim is appropriate.

3. <u>Defendant Zapata</u>

   a. <u>Liability</u>

Smith states in a verified complaint that Zapata (1) beat him while he was unconscious, delivering kicks and punches to his face and body with such force as to wake him, (2) yanked the

12

taser barbs from Smith's chest so as to cause bleeding, (3) dropped his body weight on Smith's neck to secure Smith's hands, (4) deliberately steered Smith into door jambs, damaging Smith's teeth and bruising his head with knots, and (5) kicked Smith twice on the side of his right knee after giving incoherent orders. Compl. Attach. at 2. In his affidavit, Zapata does not address the allegations set forth in (1), (2), and (4), aside from stating generally "[a]t no time did I run Mr. Smith into any objects or assault him in any manner." Defs.' App. at 99.

Having reviewed the evidence in a light most favorable to Smith, and in light of the five factors set forth in Valencia, the court has determined that Zapata acted in good faith with respect to actions (3) and (5). The evidence makes clear that Zapata undertook those actions to maintain MLEC's security, and that the force he used was not excessive. Accordingly, Zapata is entitled to judgment as a matter of law with respect to actions (3) and (5).

A fact issue remains as to whether Zapata engaged in actions (1), (2), and (4), and whether such actions were taken in good faith or maliciously. Even assuming that Zapata pulled out the taser barbs from Smith's chest, the court concludes that Smith has not rebutted Zapata's defense of qualified immunity. Accordingly, Zapata is entitled to judgment as a matter of law with respect to action (2).

However, the court is unaware of, nor has Zapata provided the court with, any reason that Zapata would need to restore

13

order by kicking and punching Smith while he was unconscious or deliberately running him into door jambs. Because there are material questions of fact regarding the circumstances of which Zapata used force on Smith, the court cannot determine that the use of force described in actions (1) and (4) was objectively reasonable.[3] As discussed in Section IV.B., the parties also dispute the extent of Smith's injuries. Because the required level of injury for an excessive force claim is directly related to the amount of force that is constitutionally permissible under the circumstances, and the factual circumstances of Zapata's use of force are in dispute, a genuine issue of material fact exists as to whether Smith suffered an injury that was more than de minimus. Accordingly, summary judgment with regards to actions (1) and (4) is inappropriate.

    b.   <u>Damages</u>

Zapata argues that, as a matter of law, Smith is not entitled to compensatory damages for medical expenses, pain and suffering, or for being placed in a high security prison.

    i.   <u>Medical Expenses</u>

Zapata argues that Smith is not entitled to recover damages for his past medical expenses because the medical expenses he complains of have been either satisfied by the United States Marshals Service or written off. The evidence adduces that Smith

---

[3]The court cannot hold that a reasonable officer would not have known that beating and punching an unconscious detainee and intentionally slamming a detainee into door jambs while transporting him was unlawful.

14

has not paid, and will not have to pay in the future, any medical expenses listed in his complaint. Accordingly, Smith is not entitled to compensatory damages for these medical bills.

### ii. Pain and Suffering

Zapata contends that Smith cannot recovery compensatory damages for his pain and suffering because his injuries were de minimus. The Prison Litigation Reform Act mandates that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Fifth Circuit has held that the physical injury requirement for purposes of 42 U.S.C. § 1997e(e) is coterminous with the standard for determining whether a plaintiff has suffered a physical injury in the context of an excessive force claim. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). As discussed in Section V.B.3.a., because a material issue of fact exists as to the circumstances of the force used by Zapata, summary judgment is inappropriate.

### iii. Prison Designation

Finally, Zapata argues that any damages relating to Smith being placed in a high-security prison because of a "management variable letter" are inappropriate because Smith can show no evidence that he was designated to a high-security prison because of the letter, nor can he make any showing that Zapata's actions had anything to do with the letter. The court is satisfied that

15

Zapata is entitled to judgment as a matter of law as to any claim or damages relating to Smith's security designation.

VI.

Order

For the reasons discussed above, the court concludes that the motions of Mansfield, Edun, and Aguirre should be granted, and Zapata's motion should be granted in part and denied in part.

Therefore,

The court ORDERS that all claims and causes of actions asserted by Smith against Mansfield, Edun, and Aguirre in this action be, and are hereby, dismissed with prejudice.

The court further ORDERS that the motion of Zapata be, and is hereby, granted with respect to Smith's compensatory damages for medical bills and his security designation, along with his claim based on actions (2), (3), and (5) as described in this order, and denied as to all other relief sought.

SIGNED June 12, 2009.

JOHN McBRYDE
United States District Judge